Filed 8/11/25  P. v. Lara CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE FRANCISCO LARA,<br><br>    Defendant and Appellant. | F087791<br><br>(Super. Ct. No. BF155975B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Dina Petrushenko and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**PROCEDURAL HISTORY**

On April 17, 2015, Jose Francisco Lara was convicted by jury of a multitude of felony and misdemeanor offenses stemming from a theft related crime spree spanning

May, June and July 2014.[1]  Allegations of prior serious felonies (Pen. Code, § 667, subd. (a))[2] and prison priors (§ 667.5, subd. (b)) were also found true.  Lara was sentenced to a total term of 25 years to life plus 30 years.

In 2016, Lara appealed and on May 3, 2018, this court remanded the case back to the trial court with instructions to reduce one count to a misdemeanor, to dismiss one count, to reinstate another count, and resentence Lara accordingly.[3]

In January 2023, while the case was still pending on remand in the trial court, Lara filed a motion for resentencing pursuant to section 1170.1.  Subsequently, Lara filed a petition for recall of his sentence and resentencing pursuant to section 1172.75.

On March 21, 2024, the court resentenced Lara to 25 years to life on count 3, plus 10 years for two five-year section 667, subdivision (a) prior serous felony enhancements.  On the remaining counts, the court imposed a total determinate term of 10 years, eight months, to be served consecutive to count 3.  The court struck all allegations and findings for the three prior prison term enhancements previously imposed.

On appeal from resentencing, Lara contends his conviction must be reversed and remanded for a conditional mental health diversion hearing; that his rights were violated by the trial court's imposition of consecutive sentences over defense counsel's objection that the offenses at issue constituted a single course of conduct; and that the abstract of judgment must be amended.  We find no merit to any of Lara's claims and affirm.

## DISCUSSION

I.     MENTAL HEALTH DIVERSION UNDER SECTION 1001.36

Lara first contends that this matter should be conditionally reversed and remanded so that the trial court can exercise its discretion to determine if he is suitable for mental

---

[1]     (See *People v. Bravo* (May 3, 2018, F071915) [nonpub. opn.].)

[2]     All further statutory references are to the Penal Code unless otherwise stated.

[3]     *People v. Bravo, supra,* F071915.

2.

health diversion, citing his extensive substance abuse history. We find Lara has forfeited his claim, and find no merit to his alternate claim that he received ineffective assistance of counsel for counsel's failure to raise the issue at resentencing.

*Legal Principles*

Enacted in 2018, with an effective date of June 27, 2018, section 1001.36 authorizes pretrial diversion "on an accusatory pleading" for defendants with qualifying mental disorders when the mental disorder was a significant factor in the commission of the charged offense. (Stats. 2018, ch. 34, §§ 24 & 37; § 1001.36, subds. (a)–(b).) Since its enactment, section 1001.36 has been amended multiple times, but that part of the statute that defines pretrial diversion has remained substantively unchanged. (Compare Stats. 2018, ch. 34, § 24, enacting former § 1001.36, subd. (c) with current § 1001.36, subd. (f).)

Section 1001.36 provides: "As used in this chapter ... '[p]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment," subject to specified conditions. (§ 1001.36, subd (f)(1).)

The criteria for eligibility and suitability for mental health diversion are set forth in section 1001.36, subdivisions (b) and (c). A defendant is eligible if: (1) the defendant has been diagnosed with a recognized mental health disorder as identified in the most recent edition of the Diagnostic & Statistical Manual of Mental Disorders (DSM); and (2) the disorder was "a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).) A defendant is suitable for diversion if: (1) a mental health expert opines that the defendant's mental health disorder contributing to the offense would respond to treatment; (2) the defendant consents to diversion and waives his right to a speedy trial; (3) the defendant agrees to comply with treatment as a condition of

3.

diversion; and (4) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (c).)

A trial court retains discretion to deny diversion even if the statutory requirements are met, but this discretion is not unfettered: it must be exercised in a manner consistent with the principles and purpose of the law governing diversion. (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888, 891–892.)

*Retroactivity*

Lara's case is obviously long past the pretrial stage. To support his argument for remand, Lara cites to *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). In *Frahs*, our high court concluded the original enactment of section 1001.36 applied retroactively to all nonfinal judgments. (*Frahs, supra,* at pp. 626, 630–631.) In reaching that conclusion, the Court explained that section 1001.36 "offers a potentially ameliorative benefit for a class of individuals—namely, criminal defendant who suffer from a qualifying mental disorder," invoking the *Estrada*[4] rule and raising an inference of retroactivity, and the Legislature did not clearly signal its intent to overcome that inference. (*Frahs, supra,* at pp. 631–632.)

The Court addressed the inherent conflict between the stated focus of *pretrial* diversion in section 1001.36, and the fact that retroactivity would necessarily require consideration of diversion *after* trial and adjudication had already occurred in some cases. (*Frahs, supra,* 9 Cal.5th at p. 633.) The Court concluded the language of the statute was intended to explain "how the mental health diversion program will ordinarily function: In the normal course of operations, a trial court would determine before trial whether a defendant is eligible for pretrial diversion." (*Ibid.*) However, that same language did not "demonstrate a legislative intent to 'modify, limit, or entirely forbid the retroactive application of ameliorative criminal law amendments.' " (*Id.* at pp. 633–634.)

---

[4]     *In re Estrada* (1965) 63 Cal.2d 740.

This same reasoning applies to the amendments to section 1001.36, which became effective on January 1, 2023. (See *Frahs, supra,* 9 Cal.5th at pp. 631–632; *People v. Doron* (2023) 95 Cal.App.5th 1, 6–7 (*Doron*) [applying *Frahs* and concluding the January 2023 amendments to section 1001.36 likewise apply retroactively].) The amendments are ameliorative. (*Doron*, *supra,* at p. 7.) They provide "increasingly detailed guidance for deciding whether a defendant qualifies for diversion," and specifically decrease the burden on the defendant to establish one of the enumerated criteria—that their diagnosed mental health disorder was a significant factor in the commission of the crime. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).)

As the court in *Sarmiento* recently explained, "a defendant's eligibility no longer turn[s] on findings to the court's 'satisfaction.' Rather, defendants are generally eligible if they 'ha[ve] been diagnosed' with a recognized mental disorder. (§ 1001.36, subd. (b)(1).) Beyond that, the amended statute creates a presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime. The court is directed to find a causal connection 'unless there is clear and convincing evidence that [the mental disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' (§ 1001.36, subd. (b)(2).)" (*Sarmiento, supra,* 98 Cal.App.5th at p. 891.) And, as in the original enactment, there is nothing in the January 2023 amendment to signal the Legislature's intent to overcome the inference of retroactivity. (*Doron, supra,* 95 Cal.App.5th at p. 7.)

The People concede that section 1001.36 applies retroactively, but assert that Lara forfeited the issue by failing to raise it in the trial court at the time of resentencing. Specifically, they contend Lara's trial counsel could, and should, have brought a motion for consideration for mental health diversion at or before resentencing and, having failed to do so, Lara should now be precluded from raising the issue on appeal.

5.

*Forfeiture*

A defendant may forfeit a right in a criminal case by failing to timely assert the right before the tribunal with jurisdiction to determine it. (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.) To the extent that section 1001.36 confers upon a defendant the right to have the court determine eligibility for diversion, Lara failed to invoke that right when it was readily available to him. "Section 1001.36, subdivision (b)(1) places the burden on the defendant to provide evidence in support of the diversion request, including the existence of a mental health disorder." (*People v. Braden* (2023) 14 Cal.5th 791, 814.) We agree that Lara failed to present a timely claim in the trial court and has therefore forfeited his claim on appeal.

*Sua Sponte Duty or Unaware of Discretion*

To the extent Lara suggests that the trial court had a sua sponte duty to act in this case to consider diversion, we disagree. (See *People v. Banner* (2022) 77 Cal.App.5th 226, 234.) We also reject any claim on Lara's part that the trial court was unaware of its discretion to consider mental health diversion. Lara argues that "[w]hen the record shows the trial court was unaware of its newfound discretion, a remand may be proper .…" Section 1001.36 was originally enacted in 2018, and its most recent amendments went into effect on January 1, 2023. (*Doron, supra,* 95 Cal.App.5th at p. 8.) Lara was resentenced in March of 2024, long after the latest amendment to section 1001.36.

*Ineffective Assistance of Counsel*

Lara argues in the alternative that, in the event we agree that he has forfeited the issue, he received ineffective assistance of counsel in counsel's failure to make such a motion. We disagree.

"In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance." (*People v. Mickel* (2016) 2 Cal.5th 181, 198, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–692.)

"[C]ertain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*Mickel, supra,* at p. 198.) "The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Ibid.*) We presume that counsel's actions fall within a broad range of reasonableness, and afford great deference to counsel's tactical decisions. (*Ibid.*) On direct appeal, a reviewing court will reverse a conviction based on ineffective assistance of counsel only if there is affirmative evidence that counsel had no rational tactical purpose for an action or omission. (*Ibid.*)

The record on appeal does not reveal why defense counsel did not request a hearing on defendant's eligibility for mental health diversion. Lara argues there is no conceivable rational tactical justification for the failure to request a hearing, citing his lengthy record of drug use, as evidenced in the probation report filed at sentencing in 2015.[5] That report indicated that Lara was on medication for anxiety and depression; that he self-reported marijuana use beginning at age 11 or 12; that he used methamphetamines since 1999; and that he participated in a residential treatment program between 2012 and 2013 and remained sober for a year and a half, but relapsed again and was using methamphetamine up until the day of his arrest. At sentencing in 2015, Lara's counsel argued for concurrent sentencing, citing Lara's lack of violence but continued struggles with methamphetamine as the trigger for the "crime spree carried out by Mr. Lara." The trial court found no "unusual circumstances" to warrant a grant of probation.

---

[5] We take judicial notice of the record in case No. F071915. (Evid. Code, §§ 452, subd. (d), 459.)

7.

In 2024, after the case was finally brought before the trial court to address the remittitur issued by this court in 2018, Lara, now represented by new counsel, requested a full resentencing hearing, and noted Lara's participation in "self-help" programs, including those addressing substance abuse, but that Lara continued to struggle with "controlled substances" while incarcerated. Counsel addressed ameliorating legislation it wished the trial court to consider, inter alia, amendments to section 1385. Among the amended section 1385 factors listed as a newly mitigating factor is one when the "current offense is connected to mental illness" (§ 1385, subd. (c)(2)(D)), but no mention was made of mental health diversion in the petition or at the hearing on the petition.

Lara now alleges that failure on counsel's part to request mental health diversion constituted ineffective assistance of counsel as Lara suffers "from a mental health disorder and that this same disorder was a significant factor in the commission of the offense," citing section 1001.36, subdivision (b). In support of his position, Lara argues that the eligible mental health disorders referenced by section 1001.36, subdivision (b) reference the DSM, which specifically includes substance use disorders. As argued by Lara, both parties at Lara's original sentencing hearing agreed that Lara not only suffered from substance use disorder, but also that it was a causal factor in the commission of the offenses.[6] Lara contends his current record indicates that he continues to struggle with substance use disorder, making him prima facie eligible for diversion. As argued by Lara, "there is more than an abstract possibility" he would have been granted diversion had counsel requested, citing the fact that his crimes were not "particularly violent" and that his previous success on probation appears to correspond to the one time he was provided mental health support.

---

[6] The record indicates that the District Attorney argued that he did not believe the fact that Lara was using methamphetamine at the time of the offenses showed that there was actually "cause and effect."

We disagree that Lara has shown ineffective assistance of counsel. The record is silent on counsel's reason for not seeking mental health diversion. Contrary to Lara's assertion, there are many possible justifications for that decision. Counsel may have discussed the matter with Lara and found Lara was unwilling to be subjected to mental health treatments or requirements. (§ 1001.36, subd. (b)(1).)

Most significant is the lack of any formal diagnosis that Lara suffers from a substance abuse disorder that is eligible for a mental health diversion or if he is amenable to any type of a treatment plan, as required by section 1001.36, subdivision (b)(1). Counsel may have reviewed mental health records in Lara's file and concluded such a diagnosis was unlikely. On this sparse record, Lara has failed to overcome the "strong presumption" of competence that attaches to counsel's actions. (*Strickland, supra,* 466 U.S. at p. 689.)

Lara acknowledges the lack of such paperwork, but contends it was due to his counsel's belief that remand for resentencing in 2024 was of "limited scope" and, "given the inexplicably long delay between the issuance of the remittitur and resentencing, it is understandable newly appointed trial counsel would not have had the 2018 legal changes (which did not directly address sentencing), front and center in his mind, especially as the prosecution was opposing a full resentencing." This assertion, however, is contradicted by the record. Though counsel recognized that the original remand from this court was limited, counsel maintained that "the cases are clear" that Lara was entitled to "full resentencing." Thus, counsel fully recognized the scope of the resentencing hearing.

In addition, Lara has failed to show prejudice. While Lara contends "there is more than an abstract possibility" he would have been granted mental health diversion if requested, prejudice requires a showing of a "reasonable probability." (*Strickland, supra,* 466 U.S. at p. 694; see also *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241 ["A defendant must prove prejudice that is a 'demonstrable reality,' not simply speculation"].)

Lara has failed to show prejudice as the record does not establish a key requirement for mental health diversion — a diagnosis of a mental health disorder by a qualified mental health professional. Nor is there "the opinion of a qualified mental health expert" that Lara's symptoms leading to criminal behavior "would respond to mental health treatment." (§ 1001.36, subd. (c)(1).) Given this lack of evidence, Lara's claim of prejudice amounts to speculation, which is insufficient to carry the burden. (*People v. Fairbank, supra,* 16 Cal.4th at p. 1241.)

## II. ALLEGED SENTENCING VIOLATIONS

Lara contends next that his Fifth and Sixth Amendment rights were violated at resentencing when the trial court "implicitly" adopted the factual findings by the original sentencing judge that supported imposition of consecutive terms on certain counts. We disagree.

*Background*

Lara was convicted by jury of one count of second degree robbery, a felony (§ 212.5, subd. (c)) (count 3); five felony counts and two misdemeanor counts of second-degree burglary (§ 460, subd. (b)) (counts 1, 4, 6, 7, 26, 28 & 29); two felony counts and six misdemeanor counts of receiving stolen property (§ 496, subd. (a)) (counts 2, 8, 10, 11, 12, 14, 23 & 27); two misdemeanor counts of forgery (§ 470, subd. (d)) (counts 9 & 24); one felony count of possession of a stolen vehicle (§ 496d, subd. (a)) (count 13); one misdemeanor count of petty theft (§ 488) (count 20); two misdemeanor counts of providing a false identification to a peace officer (§ 148.9, subd. (a)) (counts 21 & 25); one felony count of taking a vehicle without consent (Veh. Code, § 10851, subd. (a)) (count 5); one misdemeanor count of driving on a suspended license (Veh. Code, § 14601.1, subd. (a)) (count 19); one misdemeanor count of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) (count 15); and one misdemeanor count of possession of drug paraphernalia (Health & Saf. Code, former § 11364.1) (count 22).

Following a bench trial, the trial court found true allegations that Lara had suffered two prior strike convictions within the meaning of the three strikes law (§§ 667, subds. (c)–(j), 1170.12, subds. (a)– (e)) and served three prior prison terms (§ 667.5, subd. (b)). Thereafter, counts 2, 8, 10, 11, 13, 20 and 23 were dismissed in the interests of justice.

On June 24, 2015, the trial court sentenced Lara to a total term of 25 years to life plus 30 years, equal to: (1) a term of 25 years to life, plus two prison priors (10 years) and three one-year prison priors (three years), on count 3 (robbery) (§§ 667, subds. (a), (e)(2)(A)(ii), 667.5, subd. (b)); (2) a consecutive upper term, three-year sentence on count 1 (second degree burglary) doubled for the strike plus three, one-year prison priors (totaling nine years on that count) (§§ 460, subd. (b), 667, subd. (e), 667.5, subd. (b)); and (3) six consecutive 16-month sentences (one-third the middle term) on counts 4, 5, 6, 7, 14 and 28. Concurrent jail terms of one year on counts 12, 21, 24, 25, 26 & 29, six months on counts 15 & 19, and 90 days on count 22, were also imposed. The trial court stayed sentences on counts 9 and 27. (*People v. Bravo, supra,* F071915.)

On direct appeal, Lara argued count 7, a felony conviction for second-degree burglary, must be reduced to misdemeanor shoplifting. This Court agreed. (*People v. Bravo, supra,* F071915.) In addressing an unrelated claim of error, this Court also found the trial court had erroneously dismissed count 20, when it should have dismissed count 12. (*Ibid.*)

In our 2018 unpublished opinion in *People v. Bravo et al*, this court ordered count 7 reduced to the named misdemeanor, ordered count 12 dismissed, and ordered count 20 reinstated. Lara was a codefendant in *Bravo.* This court then ordered that Lara be "resentence[d] ... accordingly," and that a copy of the updated abstract of judgment be sent to the California Department of Corrections (CDCR). (*People v. Bravo, supra,* F071915.) The remittitur was issued on August 10, 2018.

No action took place on the remittitur until April 13, 2023. On that date, the trial court made an ex parte order, reducing count 7 to a misdemeanor and reinstating count 20. Lara was not resentenced on that date.

Thereafter, on March 20, 2024, while represented by new trial counsel, Lara filed a section 1172.75 motion to recall the sentence in order to address both changes in the relevant law and systematic racial bias in sentencing. The motion also addressed the 2018 remittitur.

A resentencing hearing was held on March 21, 2024, at which time Lara additionally moved under *Romero*[7] to strike the strike prior. The trial court denied the *Romero* motion before sentencing Lara to a total term of 25 years to life, plus 20 years and eight months, by: (1) reducing the sentence on the (now misdemeanor) count 7 to a one-year, concurrent term; (2) reducing the upper term sentences to midterm sentences; (3) striking all one-year prison priors; and (4) dismissing count 12, but imposing a one year, concurrent term on the reinstated count 20.

*Lara's Claim*

Lara was originally sentenced consecutively on counts 1, 4, 5, 6, 7, 14, and 28, despite defense counsel's argument that the offenses were related to a single "crime spree carried out by Mr. Lara." The trial court disagreed, finding the "objectives" of the counts were "predominantly independent of each other"; they were not "committed so closely in time and place as to indicate a single period of aberrant behavior"; and "the crimes involve[d] several acts of violence or threats of violence."

Lara now contends the resentencing court "implicitly" readopted the trial court's ruling that these counts (except for count 7) were to run consecutively, constituting judicial factfinding in violation of *Erlinger v. United States* (2024) 602 U.S. 821

---

[7]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

(*Erlinger*) and *People v. Lynch* (2024) 16 Cal.5th 730, 761–762 (*Lynch*) and his Fifth and Sixth Amendment rights.

Because counts 1, 4, 5, 6, 14, and 28 are at issue, we briefly recite the facts of those counts. Count 1 (second degree burglary) was the breaking a window and taking a purse from a vehicle on May 7, 2014; Count 4 (second degree burglary) was the breaking into a vehicle and taking an engagement ring, personal checks and credit cards on July 5, 2014; Count 5 (theft of a vehicle) was the theft of a vehicle on July 5, 2014; count 6 (second degree burglary) was the taking of a wallet, driver's license, credit cards, gift cards, and iPhone from a vehicle on July 9, 2014; Count 14 (receiving stolen property) was the use of a stolen credit card to make purchases on May 20, 2014; and count 28 (second degree burglary) was the breaking into a vehicle and taking a backpack containing clothing, a wallet with $1,100 in cash, credit cards, social security card, and driver's license on May 14, 2014.

*Applicable Law and Analysis*

Lara's claim, in essence, is that any judicial factfinding that is necessary to impose consecutive sentences violates the Sixth Amendment. We disagree.[8]

The Sixth Amendment guarantees that any fact, other than the fact of a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*).) Further, any fact, other than the fact of a prior conviction, that increases the mandatory minimum sentence for a crime, "is an 'element' that must be submitted to the jury." (*Alleyne v. United States*

---

[8]     The very recent opinion from our Supreme Court, *People v. Wiley* (2025) 17 Cal.5th 1069 does not change our analysis. *Wiley* relied, in part, on *Erlinger,* and found the trial court violated the defendant's constitutional rights to a jury trial by adjudicating underlying facts related to his prior convictions and improperly relying on its conclusions in choosing to impose an upper term sentence.

13.

(2013) 570 U.S. 99, 103 (*Alleyne*).)  However, the Sixth Amendment does not require a jury to find facts required to decide whether to impose a consecutive sentence.  (*Oregon v. Ice* (2009) 555 U.S. 160, 163, 168 (*Ice*).)  Rather, because a jury historically played no role in determining whether sentences would run concurrently or consecutively, "regime[s] for administering multiple sentences" remain "the prerogative of state legislatures."  (*Id*. at p. 168.)

In *People v. Catarino* (2023) 14 Cal.5th 748, 750 (*Catarino*), our Supreme Court held that section 667.6, subdivision (d), which requires a court to impose full term consecutive sentences for certain sex crimes if the court finds that the crimes "involve[d] the same victim on separate occasions," does not violate the Sixth Amendment.  Section 667.6, subdivision (d) is a sentencing statute that relates only to the decision of whether to impose consecutive sentences.  It provides that for certain enumerated sex offenses, a court shall impose "[a] full, separate, and consecutive term" if a court determines "the crimes involve separate victims or involve the same victim on separate occasions." (§ 667.6, subd. (d).)  That factual finding by the trial court does not violate the Sixth Amendment under the rationale of *Ice*.  (*Catarino, supra*, 14 Cal.5th at p. 750.)

> "Section 667.6(d) applies only when a defendant 'has been tried and convicted of multiple offenses, each involving discrete sentencing prescriptions'; it governs how these sentences run relative to each other, a 'sentencing function in which the jury traditionally played no part.' [Citation.]  This is distinct from the *Apprendi* line of cases, which concerns 'sentencing for a discrete crime, not ... for multiple offenses different in character or committed at different times.' " (*Catarino, supra*, 14 Cal.5th at pp. 755–756; see *Ice, supra*, 555 U.S. at pp. 163, 167.)

We find the holding and rationale of *Catarino* apply equally here.  At initial sentencing, the trial court concluded, in support of consecutive sentencing, that the "crimes were committed at different times and separate places." Like the factfinding in *Catarino*, the court here determined, for purposes of sentencing, that crimes for which appellant had been convicted occurred on separate occasions.  There was no need for the

14.

resencing court to revisit these findings. Accordingly, under *Catarino*, Lara's Sixth Amendment claim is without merit.

Lara, however, argues that, under the recent decisions of *Erlinger, supra,* 602 U.S. 821 and *Lynch, supra,* 16 Cal.5th 730, the consecutive sentences imposed violated his federal constitutional rights. We find these cases distinguishable from the issue here.

In *Erlinger*, the defendant was convicted of a single count of being a felon in possession of a firearm, a crime carrying a sentence of up to 10 years in prison. (*Erlinger, supra*, 602 U.S. at p. 825.) However, he was charged under the Armed Career Criminal Act (ACCA), which provided for an increased sentence if he had three prior qualifying convictions that were " 'committed on occasions different from one another.' " (*Erlinger, supra,* at p. 834.) At sentencing, the court determined the defendant had suffered the qualifying convictions on different occasions and imposed a sentence of 15 years in prison. (*Id*. at p. 826.)

The United States Supreme Court held that under the rationale of *Apprendi* and *Alleyne*, a jury, not a judge, had to make the requisite finding of different occasions under the ACCA. (*Erlinger*, *supra*, 602 U.S. at p. 834.) That was because the effect of the ACCA was to increase the defendant's minimum and maximum potential sentence for his single crime. (*Erlinger, supra,* at p. 835.) Specifically, the trial court's finding of different occasions increased the defendant's sentence from one carrying a maximum of 10 years to one carrying a minimum of 15 years and potentially up to life in prison. (*Ibid*.)

*Erlinger* did not involve consecutive sentencing and it did not cite *Ice*. Rather, it falls squarely under the *Apprendi* line of cases for sentencing for a discrete crime. Indeed, the high court noted "this case is as nearly on all fours with *Apprendi* and *Alleyne* as any we might imagine." (*Erlinger, supra*, 602 U.S. at p. 835.) But *Apprendi* and *Alleyne* do not apply to consecutive sentences applied for multiple offenses. (*Catarino, supra*, 14 Cal.5th at p. 750; see also *Ice, supra*, 555 U.S. at pp. 163, 168–169.) And,

15.

unlike in *Apprendi*, *Alleyne*, and *Erlinger*, the application of consecutive sentences does not increase a defendant's sentence for a discrete crime beyond that authorized by the jury's verdict.

Here, the sentence imposed on each count was fully authorized by the jury's verdicts. The trial court's finding of separate occasions impacted only the manner in which it aggregated those sentences. That finding did not violate the Sixth Amendment. (*Catarino*, *supra*, 14 Cal.5th at p. 757; *Ice*, *supra*, 555 U.S. at pp. 163, 168–169.)

For the same reasons, the California Supreme Court's decision in *Lynch, supra*, 16 Cal.5th 730 does not apply to the consecutive sentences imposed in this case. In *Lynch*, the Supreme Court clarified the prejudice standard when the sentencing predated the effective date of amended section 1170, subdivision (b) and held that appellate courts must apply the *Chapman*[9] standard of prejudice for federal constitutional error when a "trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch, supra*, 16 Cal.5th at p. 768.) *Lynch* explained that *Erlinger* and *Apprendi* supported its holding that the recently amended section 1170 allows for imposition of the high term only when additional factfinding has been done regarding the aggravating factors, thus increasing a defendant's exposure to punishment for a specific offense. (*Lynch, supra,* at pp. 761–762.)

*Lynch*'s reliance on *Erlinger* and *Apprendi* to interpret section 1170 has no effect on the relationship between *Apprendi* and consecutive sentencing. As noted above, *Erlinger* did not expand *Apprendi* in any way that affects consecutive sentences. And *Lynch*, in relying on *Erlinger* and *Apprendi*, was interpreting a statute—section 1170— that involved imposition of increased punishment for a single offense. *Lynch* did not

---

[9]     *Chapman v. California* (1967) 386 U.S. 18.

16.

address or call into question the continued validity of the judicial factfinding for consecutive sentencing.

We therefore find that the trial court's imposition of consecutive sentences for multiple crimes occurring on separate occasions did not implicate Lara's Sixth Amendment right to a jury trial.

III.     ABSTRACT OF JUDGMENT

Finally, Lara contends that the abstract of judgment must be corrected to include an order that the CDCR calculate his "post 2015 sentencing hearing conduct credits." This we need not do.

It is the duty of the CDCR to calculate and award conduct credits earned after Lara's original sentencing.  (See *People v. Dean* (2024) 99 Cal.App.5th 391, 395–396.) Aside from mere speculation, there is no basis to conclude that the CDCR will not properly fulfill its obligation to calculate and award Lara conduct credits for which he is due since his original remand to the CDCR in 2015.

**DISPOSITION**

The judgment is affirmed.

FRANSON, J.

WE CONCUR:


LEVY, Acting P. J.


MEEHAN, J.

17.